# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| **KIMBERLY MULVIHILL,** individually and on behalf of all others similarly situated, | Case no.    2:24-cv-00523-DCN |
| *Plaintiff,* | **CLASS ACTION COMPLAINT** |
| *v.* | **DEMAND FOR JURY TRIAL** |
| **SELECT HEALTH OF SOUTH CAROLINA, INC. d/b/a FIRST CHOICE NEXT,** a South Carolina corporation, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kimberly Mulvihill ("Mulvihill" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Select Health of South Carolina, Inc. d/b/a First Choice Next ("First Choice Next" or "Defendant") to stop its practice of placing prerecorded calls to cellular telephone numbers nationwide without consent and *after* consumers have instructed the Defendant stop calling, and to obtain redress for all injured by Defendant's conduct. Plaintiff, for its Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1.     Plaintiff Mulvihill is a resident of Piedmont, South Carolina.

2.     Defendant First Choice Next is a South Carolina corporation headquartered in Charleston, South Carolina.   Defendant conducts business throughout this District.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute.

4.     This Court has personal jurisdiction over Defendant because Defendant is located in this District.

5.     Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant is located in this District.

## INTRODUCTION

6.     As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

2

7.    When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8.    By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9.    The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10.    According to online robocall tracking service "YouMail," 3.8 billion robocalls were placed in December 2023 alone, at a rate of 121.6 million per day. www.robocallindex.com (last visited January 14, 2024).

11.    The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12.    "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

13.    "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14.    Select Health of South Carolina, Inc. operates using the d/b/a First Choice Next.[3]

15.    First Choice Next sells health plans to consumers throughout South Carolina.[4]

16.    First Choice Next places calls to its health plan members to solicit additional plans and benefits, as per Plaintiff's experience.

17.    First Choice Next leaves pre-recorded solicitation voice messages when consumers do not answer calls.

18.    To make matters worse, First Choice Next continues to place pre-recorded solicitation voice messages after being told to stop calling, as per Plaintiff's experience.

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.firstchoicenext.com/terms-of-use.aspx
[4] https://www.firstchoicenext.com/about/index.aspx

19.    In response to these calls, Plaintiff Mulvihill brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

## FACTS SPECIFIC TO PLAINTIFF MULVIHILL

20.    Plaintiff Mulvihill is the sole owner and user of her cell phone number ending in 5627.

21.    Her cell phone number also starts with 864, a South Carolina area code.

22.    Plaintiff Mulvihill registered her cell phone on the DNC on November 16, 2018.

23.    Plaintiff Mulvihill uses her cell phone number for personal use only. It is not associated with a business.

24.    Plaintiff Mulvihill purchased a health insurance plan from Defendant First Choice Next.

25.    In November of 2023, Plaintiff received calls from First Choice Next to her cell phone.

26.    Plaintiff Mulvihill did not answer the calls, but pre-recorded voicemails were left asking her to call back First Choice Next to upsell her a more expensive health plan. The Plaintiff has the silver plan but there exists more expensive plans such as the gold plan and the premier plans.

27.    On November 20, 2023 at 1:16 PM, Plaintiff Mulvihill called First Choice Next at 855-701-3751.

28.    Plaintiff spoke to a First Choice Next employee. She provided her cell phone number to the employee and specifically asked for the calls to stop. She was told that her phone number would be taken out of Defendant's call system.

29.    Despite the stop request, Plaintiff Mulvihill received additional unsolicited pre-recorded voicemails from Defendant First Choice Next, from 855-701-3751 on:

- December 4, 2023 at 4:53 PM;

- December 5, 2023 at 11:39 AM;

- December 6, 2023 at 11:21 AM;

- December 7, 2023 at 10:52 AM and 5:20 PM;

- December 8, 2023 at 12:14 PM;

- December 11, 2023 at 5:19 PM; and

- December 12, 2023 at 11:43 AM.

30.    On December 12, 2023 at 11:44 AM, Plaintiff Mulvihill called 855-701-3751 again.

31.    Plaintiff got through to a First Choice Next employee and as per the previous outgoing call, Plaintiff provided her cell phone number and asked for the calls to stop.

32.     The employee confirmed that the calls would stop.

33.     However, Plaintiff received additional unsolicited pre-recorded voicemails from First Choice Next to her cell phone, from 855-701-3751 on:

- December 13, 2023 at 11:12 AM;

- December 15, 2023 at 12:24 PM;

- December 16, 2023 at 1:35 PM;

- December 17, 2023 at 12:02 PM; and

- December 18, 2023 at 11:11 AM.

34.     On December 18, 2023 at 11:30 AM, Plaintiff Mulvihill called 855-701-3751 again.

35.     Plaintiff got through to a First Choice Next employee and as per the previous outgoing calls, Plaintiff provided her cell phone number and asked for the calls to stop.

36.     The employee confirmed that the calls would stop.

37.     Despite 3 prior stop requests, Plaintiff Mulvihill received another unsolicited call to her cell phone from First Choice Next, from 855-701-3751 on December 19, 2023 at 5:35 PM.

38.     Plaintiff Mulvihill did not answer this call, but a pre-recorded voicemail was left:



39.    Plaintiff Mulvihill called 855-701-3751 on December 19, 2023 at 5:51 PM.

40.    Plaintiff Mulvihill spoke to a First Choice Next employee. She provided her cell phone number and asked for the calls to stop, explaining that she had already asked a few times for the calls to stop, but they continued. In response, she was assured that her number would be removed from the calling system.

41.    Plaintiff Mulvihill received another unsolicited call to her cell phone from First Choice Next, from 855-701-3751 on December 20, 2023 at 12:45 PM.

42.    Plaintiff Mulvihill did not answer this call, but a pre-recorded voicemail was left:



43.     Plaintiff Mulvihill called 855-701-3751 on December 20, 2023 at 1:16 PM.

44.     Plaintiff Mulvihill spoke to a First Choice Next employee. She provided her cell phone number and asked for the calls to stop, explaining that she had already asked a few times for the calls to stop, but they continued. In response, she was assured, again, that her number would be removed from the calling system.

45.     Plaintiff received additional unsolicited pre-recorded voicemails from First Choice Next to her cell phone, from 855-701-3751 on:

- December 21, 2023 at 1:25 PM;

- December 22, 2023 at 11:47 AM; and

- December 22, 2023 at 7:34 PM.

46.     Plaintiff Mulvihill called 855-701-3751 on December 22, 2023 at 7:58 PM.

47.    Plaintiff Mulvihill spoke to a First Choice Next employee. She provided her cell phone number and asked for the calls to stop, explaining that she had already asked a few times for the calls to stop, but they continued. In response, she was assured, again, that her number would be removed from the calling system.

48.    Plaintiff received additional unsolicited pre-recorded voicemails from First Choice Next to her cell phone, from 855-701-3751 on:

- December 23, 2023 at 2:50 PM;

- December 26, 2023 at 12:29 PM;

- December 28, 2023 at 12:01 PM;

- December 29, 2023 at 6:35 PM;

- December 30, 2023 at 1:41 PM;

- January 2, 2024 at 12:33 PM; and

- January 3, 2024 at 12:45 PM.

49.    Plaintiff Mulvihill called 855-701-3751 on January 3, 2024 at 7:22 PM.

50.    Plaintiff Mulvihill spoke to a First Choice Next employee. She provided her cell phone number and pleaded for the calls to stop, explaining that they were disruptive, that she had already placed multiple requests for the calls to stop, that she is not interested in updating her health insurance plan, and that the voicemails were taking up space on her phone.

51.    As with the previous stop requests, Plaintiff Mulvihill was assured that the calls would stop.

52.    Plaintiff then received another unwanted call from Defendant that resulted in a pre-recorded voicemail from 855-701-3751 on January 4, 2024 at 11:37 AM.

53.    Plaintiff Mulvihill called 855-701-3751 on January 4, 2024 at 1:09 PM.

54.    As with the previous stop request, Plaintiff spoke to a First Choice Next employee and pleaded once more for the calls to stop. Plaintiff explained again that she had already asked many times for the calls to stop. She explained that she did not want to update her health insurance plan and that the intrusive calls were taking up memory on her phone.

55.    Despite all the stop requests, Plaintiff Mulvihill received additional unsolicited pre-recorded voicemails from First Choice Next, all from 855-701-3751 on:

- January 5, 2024 at 11:34 PM and 5:16 PM;

- January 6, 2024 at 3:10 PM;

- January 7, 2024 at 2:42 PM;

- January 8, 2024 at 11:09 AM;

- January 10, 2024 at 11:14 AM and 5:25 PM;

- January 11, 2024 twice, including at 4:05 PM;

- January 12, 2024 at 11:39 AM and 5:45 PM; and

- January 13, 2024 at 12:24 PM.

56.    Plaintiff Mulvihill believes that the voicemails were all pre-recorded because they all feature the same exact generic script and because many contain unnatural pauses, distorted messages and/or incomplete messages.

57.    In addition, all of the voicemails begin with a faint beep before the pre-recorded message begins.

58.    On December 23, 2023 at 2:50 PM, Plaintiff received a pre-recorded voicemail that is very distorted, despite following the same script as the others:

"Hello, this is First Choice Next calling. Now that the open enroll… is here… check in to make sure your current... Please give us a call back at 855-701-3751 anytime between… (unintelligible). Thanks for being a First Choice Next member."[5]

59.    On December 26, 2023 at 12:29 PM, Plaintiff received a pre-recorded voicemail that sounds scripted, that was cut-off at the end stating, "Thank you for being a First Choice Next…"[6]

---

[5] https://www.dropbox.com/scl/fi/n3oy5pqckn77z10kar5ga/voicemail-10758153344.m4a?rlkey=sx6dh5s4n7ussylekjxg9vqwr&dl=0
[6] https://www.dropbox.com/scl/fi/64knh4gflbxae8zwc4lc7/voicemail-10757933472.m4a?rlkey=f570ftsps5qmeyuxtbdv1y074&dl=0

60.    On January 11, 2024 at 4:05 PM, Plaintiff received a pre-recorded voicemail that sounds like an automated machine reading a script. The intonation and overall delivery of the script is unnatural and spoken in a monotone.[7]

61.    On January 12, 2024 at 5:45 PM, Plaintiff received a pre-recorded voicemail that begins after 5 seconds of dead silence, which then cuts off abruptly and unnaturally in the middle of a word before leaving 1 minute and 11 seconds of pure silence:

> "Hello, this is First Choice Next calling. Now that the open enrollment period is here, we wanted to check in to make sure your current plan meets all your coverage needs. Please give us a call back at 855-701-3751 anytime between 8 AM and 8 PM seven days a week so we can review your plan. Thank you for being a First Choice Next me..."[8]

62.    By making unauthorized prerecorded telephone calls as alleged herein, First Choice Next has caused cell phone subscribers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the calls disturbed Plaintiff's use and enjoyment of her phone when she had to listen to the voicemails, and occupied her phone's physical memory due to the sheer volume of voicemails that were left.

63.    In the present case, a cell phone subscriber could be subjected to many unsolicited prerecorded telephone calls as First Choice Next does not take care to

---

[7] https://www.dropbox.com/scl/fi/shrx3n3i5x70k7rc122iz/January-11-2024-part-2.m4a?rlkey=gsxwowaz4wk59rrxvns5hv0he&dl=0
[8] https://www.dropbox.com/scl/fi/vv4o0oesxfyo1iycb3r94/January-12-2024-part-2.m4a?rlkey=zgib3j6fi8v4fnpxe6zdo6ru2&dl=0

ensure that the recipients of its prerecorded calls have given their prior express written consent to be called.

64.    To redress these injuries, Plaintiff, on behalf of herself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited prerecorded telephone calls to cellular telephones.

65.    On behalf of the Classes, Plaintiff seeks an injunction requiring First Choice Next to cease all unsolicited prerecorded telephone calling activities and an award of statutory damages to the class members, together with costs.

## CLASS ALLEGATIONS

66.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of itself and all others similarly situated and seeks certification of the following Classes:

> **Pre-recorded Class**: All persons in the United States to whom, from four years prior to the filing of this action through class certification, (1) Defendant or an agent on behalf of Defendant placed a call, (2) (3) with an artificial or prerecorded voice.

> **Stop Class**: All persons in the United States from four years prior to the filing of this action who (1) Defendant (or a third person acting on behalf of Defendant) called, (2) on their cellular telephone number, (3) using a prerecorded voice, (4) *after* Defendant's records reflect that the person indicated that s/he no longer wished to receive calls from Defendant.

> **South Carolina Pre-Record Class**: All persons in South Carolina to whom, from four years prior to the filing of this

action through class certification, (1) Defendant or an agent on behalf of Defendant placed a call, (2) with an artificial or prerecorded voice.

**<u>South Carolina Stop Call Class</u>:** All persons in South Carolina from four years prior to the filing of this action who (1) Defendant (or a third person acting on behalf of Defendant) called, (2) on their cellular telephone number, (3) using a prerecorded voice, (4) *after* Defendant's records reflect that the person indicated that s/he no longer wished to receive calls from Defendant.

67.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definition following appropriate discovery.

68.     **Numerosity**: The exact size of the Classes are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant placed prerecorded telephone calls to thousands of cellular telephone subscribers who fall into the definition of the

Classes. Members of the Classes can be easily identified through Defendant's records.

69.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Class include, but are not necessarily limited to the following:

> (a) whether Defendant's conduct constitutes a violation of the TCPA;
>
> (b) Whether Defendants placed pre-recorded voice message calls to Plaintiff and members of the Pre-recorded Class without consent to make the calls;
>
> (c) whether Defendant made prerecorded telephone calls to members of the Stop Class after being instructed by members of the Stop Class to stop calling them; and
>
> (d) whether members of the Stop Class are entitled to treble damages based on the willfulness of Defendant's conduct.

70.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and its counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor its counsel has any interest adverse to the Classes.

71.    **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Prerecorded Class)**

72.    Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

73.    Defendant transmitted unwanted telephone calls to Plaintiff and the other members of the Pre-recorded Class using a pre-recorded voice message.

74.     These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff and the other members of the Pre-recorded Class.

75.     The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of the Defendant's conduct, Plaintiff and the other members of the Pre-recorded Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

<strong>SECOND CAUSE OF ACTION</strong><br>
<strong>Telephone Consumer Protection Act</strong><br>
<strong>(Violation of 47 U.S.C. § 227)</strong><br>
<strong>(On Behalf of Plaintiff and the Stop Class)</strong>

76.     Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

77.     Defendant made unsolicited and unwanted prerecorded calls to telephone numbers belonging to Plaintiff and the other members of the Stop Class on their cellular telephones after they had informed Defendant that they no longer wished to receive such calls from Defendant.

78.     By making unsolicited telephone calls to Plaintiff and other members of the Stop Class's cellular telephones using a prerecorded voice after they requested to no longer receive such calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by doing so without prior express consent.

79.    As a result of Defendant's unlawful conduct, Plaintiff and the members of the Stop Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

80.    Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Stop Class.

## THIRD CAUSE OF ACTION
**South Carolina Telephone Privacy Protection Act**
**(Violation S.C. Code § 37-21-70)**
**(On Behalf of the Plaintiff and the South Carolina Telephone Privacy Protection Act Class)**

81.    Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

82.    Defendant made unwanted solicitation telephone calls to phone numbers belonging to Plaintiff and the other members of the SCTPPA Class.

83.    These solicitation calls were made *en masse* without the consent of the Plaintiff and the other members of the SCTPPA Class to receive such solicitation calls.

84.    Defendant did not have consent from the Plaintiff or the SCTPPA Class to make these calls.

85.    Defendant has, therefore, violated S.C. Code § 37-21-70. As a result of Defendant's conduct, Plaintiff and the other members of the SCTPPA Class are each entitled to a minimum of $1,000 in damages, and up to $5,000 in damages, for each violation and attorneys' fees.

## FOURTH CAUSE OF ACTION
**South Carolina Telephone Privacy Protection Act**
**(Violation S.C. Code § 37-21-70)**
**(On Behalf of the Plaintiff and the Stop Call South Carolina Telephone Privacy Protection Act Class)**

86.    Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

87.    Defendant made unwanted solicitation telephone calls to phone numbers belonging to Plaintiff and the other members of the SCTPPA Class after they revoked their consent.

88.    These solicitation calls were made *en masse* after consumers asked for Defendant to stop calling.

89.    S.C. Code § 37-21-70 states that "A person may not initiate, or cause to be initiated, a telephone solicitation directed to a telephone number when a person at that telephone number previously stated a desire not to be contacted again by or on behalf of the person on whose behalf the telephone solicitation is being made… Any request not to receive telephone solicitations must be honored for at least five years from the time the request is made."

90.     Defendant has, therefore, violated S.C. Code § 37-21-70. As a result of Defendant's conduct, Plaintiff and the other members of the SCTPPA Class are each entitled to a minimum of $1,000 in damages, and up to $5,000 in damages, for each violation and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

91.     An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Classes, and appointing Plaintiff's counsel as Class Counsel;

92.     An award of money damages;

93.     An order declaring that Defendant's actions, as set out above, violate the TCPA;

94.     An injunction requiring Defendant to cease all unsolicited prerecorded calling activities, and otherwise protecting the interests of the Classes; and

95.     Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**KIMBERLY MULVIHILL**, individually and on behalf of class of similarly situated individuals

Dated: January 31, 2024

By: /s/ Ryan Duffy
Ryan Duffy
The Law Office of Ryan P. Duffy, PLLC
1213 W. Morehead Street
Suit 500, Unit #450
Charlotte, North Carolina 28208
ryan@ryanpduffy.com
Telephone: (704) 741-9399

*Local counsel for Plaintiff and the Putative Classes*

Avi R. Kaufman
Kaufman P.A.
kaufman@kaufmanpa.com
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133

Phone: (305) 469-5881

*Counsel for Plaintiff and the putative Classes*